Mr. Grasso for the appellant Mr. Byrd for the appellee. Mr. Grasso, good morning. Good morning, Judge. Good morning, Judge Rogers, Judge Ginsburg, Judge Henderson. I really hate to do this, but would it be okay to take a two-minute bathroom break?  Very tight schedule right now. I guess we'd better let you. I really appreciate it. I will be right back. Thank you very much. Ann? Ann, are you there? Is it possible the judges could have some privacy for the next few minutes? Judge Henderson, is that okay? That's fine. That's perfect. Thank you. All right, Mr. Grasso, proceed. Thank you very much. I apologize. I was entranced by the previous case. May it please the court. Good morning, Judge Rogers, Judge Ginsburg, and Judge Henderson. I must start by saying that it is an honor to be arguing before this circumstances that we have to do it virtually because of the ongoing pandemic. It's a little bit weird. I think that it deprives us of a dynamic that we would normally have. Mr. Grasso, would you please get to this case? Absolutely. The facts underlying this case are extremely complicated. There are 20 years in the making. It has a very complicated procedural history. The facts of this case are not illustrious. They're not sexy. But the legal issue and the precedent that may be set by this court is of potentially historical magnitude. That is because this case involves the interpretation of statutes that codify international law and thereby impact the entire world, just as the ongoing pandemic is. As this case, with all matters of this nature, is before this court, one of the planet's most prestigious courts, the implications of this precedent cannot be ignored. And they will have an unpredictable trickle-down effect for the duration of human existence. Let's talk about your argument as to why you contend the district court abused its discretion in lifting the stay. Okay. So in terms of the district court lifting the stay, I think that it was done prematurely because of the ongoing proceedings in Europe. And that is currently the crux of the issue before the court today, which is why I implore the court to reserve judgment pending the outcome of the highest court in Europe. So when you argued to the district court... I'm sorry? When you argued to the district court... I didn't. When an attorney on behalf of your client argued to the district court, that lifting the stay would be premature, he referenced or she referenced both what had happened at the Paris Court of Appeals and subsequently the referral to the European Court. Yes. The record shows as well that the district court was aware that the tribunal did not have jurisdiction under the ECF. Your client was contesting the jurisdiction of the tribunal to proceed. That is correct. My client has always contended that the tribunal did not have jurisdiction under the ECF. The district court took the position, as I understand it, that the only matter remaining was not jurisdiction, but whether public interest. I'm sorry, Judge, you just broke up before public interest. The district court took the position that in light of what had happened, by the time the matter was before him, the only remaining issue was not jurisdiction, but public interest. Is that correct? That's my understanding, Judge, yes. Was that accurate? I don't believe so. It depends on how you define public interest, which I think is part of the question. Do you consider it to be a jurisdictional issue? I think that this court can decide to consider it a jurisdictional issue, yes. Well, do you have any cases that that's how this court has viewed the public interest standard? Well, I think that as to public interest specifically, I do not have any cases, no. However, I think that the most on-point case as to that question is actually the case that was most recently introduced by a counsel for the appellee, which was recently decided by this court in process. It was in that case where the court went out of its way to stress the importance of affording almost every reasonable inference to a foreign sovereign. Well, Mr. Grasso, let me focus you more directly, okay? Because in your reply brief, you state that appellee has not addressed the argument that you're making. This was the supplemental brief. In my record, it's the reply brief in this court. As far as process goes, it was only- No, no, no. I'm sorry, we're misunderstanding. In the reply brief, you say that appellee deliberately ignored Moldova's argument that the Paris Court of Appeals had stayed the remand proceeding and transferred the matter to the Court of Justice. That's correct. Is there anything in the record that indicates under French law that the award nevertheless is to be enforced? Well, Your Honor, with all due respect, I'm not familiar with French law. However- Well, I asked you in the record. I believe that there is. Where? Because in the record, it's in the record very clearly that there is currently a case pending before the highest court in Paris. So I think that it is an open question. I don't think that that question of law has been settled. So the answer to my question is no? I think that the answer to your question is yes. Yes, there is evidence in the record that the award can be enforced, notwithstanding these jurisdictional appeals. Well, that I think is a different question and that I would have to answer no to. Mr. Grasso, I was under the impression that nobody notified the district judge before he lifted the stay order that the court in Paris had referred the matter to the European Court of Justice a few weeks before. Is there any indication in the record that the district judge was informed of that? Not that I am aware of. No, I couldn't find it either. So it seems to me that Moldova dropped the ball here in not informing the district judge about the reference. But regardless of that, that it's out of bounds for you to be arguing the reference to the European Court of Justice when it wasn't put before the district court. Although it did occur in time before he lifted the stay order by three weeks. That's correct, which is in large part why I'm arguing it. Also, because I don't believe that this case should be viewed in a vacuum. I think that there are much broader implications in this matter and that this court does have the power to decide in accordance with its previous decisions. And the decisions such as process to the extent that the language and process constituted stare decisis that there was no waiver of sovereign immunity by the Republic of Moldova in this matter. And that the appellee's argument does not hold water in that respect. And that this court therefore reserve judgment because it's always been the policy of the United States to defer these cases to the sovereigns that may be more familiar with cultures that we don't understand, different politics, different jurisprudence. Judge Ginsburg. Nothing further. Thank you. All right, Judge Rogers. Yes, I have a question. Going back to my first question. Yes. What were the jurisdictional arguments that your client made to the tribunal, to the Paris Court of Appeals? Well, Your Honor, my client never agreed that the treaty, that the ECT, the Energy Charter Treaty, applied to the arbitration. And thereby invoking the arbitration exception here under 28 United States Code 1605-2-6, which is one of the appellee's primary arguments. And that was one of their main arguments before the tribunal. Did they make another jurisdictional argument? I believe so, that the New York Convention did not apply either. And what did the Paris Court of Appeals hold? Well, the Paris Court of Appeals, I believe, remanded the case. What I'm focusing on is, it specifically said it was not going to address other issues. It said, right? The Paris Court of Appeals? Yeah. I don't know that that language was specifically used. Well, the briefs don't tell me either. But when it got up, when the case got before the Court of Cassiasson, I'm not sure how to pronounce it, the highest court in France. Yes. It said the Paris Court had mistakenly added a requirement that was not in the treaty, but that the court itself, the highest court, was not going to address other issues. Sent the case back to the Paris Court of Appeals, to start all over. I don't believe to start all over, Your Honor. I believe that the Paris Court of Appeals was to lift the stay and... No, it was the Paris Court of Appeals that said it was going to start all over, before it certified the matter to the European Court. Okay. That's not an okay answer. I mean, is that correct? Well, so... Our interpretation is that the Paris Court of Appeals simply chose not to follow the instructions of the French Court of Cassiasson, and did decide to reopen all of the appellate issues. And this includes the issues which we were just talking about, referring to the tribunal's findings regarding the arbitration, the arbitration award, and my client's issues with the award to begin with, on the merits of that case. And this is a substantial issue, and there's a lot of money involved between two foreign parties. And I think that it boils down to the fact that I just don't think that it belongs in this court. I think we understand that's your argument. I'm trying to flesh out what's the basis for that argument. Okay. So, obviously, this case has a very complicated procedural history. And part of the basis of my argument is the fact that there's such a complicated procedural history because of the action of foreign courts, of which we can't even pronounce the names of. I think that that in and of itself says something about the reservation of the judgment in this matter. The fact that my French is not perfect is not going to help you. Well, I would also state that in Chevron, as was argued in the briefs, the Court of Appeals stated that if there was no arbitration award to be enforced, that the district court would lack jurisdiction over a foreign sovereign and that the action must be dismissed. I think that the facts here are more knowledgeable to Chevron and that the underlying logic of all of these cases, the underlying rationale, the underlying policy is stagnant throughout. And that there is an entire body of law that is much broader than the body of law that carves out these narrow exceptions to the New York Convention, to the Foreign Sovereign only were implemented because, as things go, different issues arise in the courts involving foreign parties, and it needs to be dealt with by the legislature. Now, here we are, and we are discussing and arguing about procedure and purely procedural issues that have no bearing on the facts of the case or the merits of the case. That are best decided elsewhere. Judge Rogers, has he answered your question? I'm fine. All right, Judge Ginsburg. Nothing further. Thank you. All right. Mr. Byrd. Mr. Byrd. Yes. Good morning. May it please the Court. My name is Gene Byrd, and I will be, and I'm representing STILEX, the appellee in this matter. Unfortunately, in two days, we'll be commemorating a very important date. That's seven years since the tribunal in Paris issued an award, almost $60 million in favor of the predecessor of STILEX, the company named Energo Alliance. For seven years, Moldova resisted enforcement of the awards through various court proceedings in which it participated or which it initiated. Even here in Washington, D.C., in the district court, Moldova initially did not even bother to retain a counsel and spend time of the district court to bring up, to raise defenses, various defenses that the counsel, which from Moldova, who entered representation several years after the petition was filed in the district court, even tried to revoke, tried to bring back, to turn back the time and try to file his defense all anew, which district court, of course, denied. The question that was discussed here before is the abuse of discretion, the abuse of whether the district court abused his discretion, and Judge Rogers was absolutely properly asked, where did the district court abuse his discretion? Because this is the standard to deny, to grant or to reverse a decision of the district court to grant or deny stay under the, in the petition proceedings under the New York Convention. Abuse of discretion can arise both where there is an error of law or a clear error of fact, correct? That is my understanding, yes, Your Honor. All right, so my question is, and I'm just looking for it in the record to point you directly to the district court statement. When the district court described his understanding of the case that was before him, did he accurately describe it? I believe so, Your Honor, and the district court pointed out that the Cassation Court, that's my understanding how it's pronounced, but the Cassation, it's of course, Cassation, yes, from the highest court in France, they set aside or reversed the court of appeals. That was the moment when the award was, became valid and binding again. And when it's sent, when the Cassation Court sent the case back to the court of appeals, that is the, since that moment of time, the award became valid and binding. So there is no indication on the record that presently the award is not valid and binding. I looked at your expert's statement that's in the record, and he does make a general statement to the effect that if there's an award and there's no stay, then the award is immediately enforceable. What I did not see, and you can tell me if I missed this, was any explication that that is the rule under Paris law when the threshold question is jurisdiction of the tribunal to proceed at all is challenging the award. In other words, as you know, in this country, just because you get a judgment from the district court doesn't mean it's necessarily enforceable, either because someone appeals or they raise a jurisdictional argument. So when the district court was describing this, he says, as to the stay, there are two questions. The first one is, what is the status of the 2013 arbitral award? All right. And then he references the statement you made. And then he goes to the URACAL factors. And he says, quote, citing URACAR, that in many countries, an arbitration award is final, binding, and enforceable, even if subject to appeal in court. I'm not questioning that statement, but I'm trying to understand if that's also true in the jurisdictional context that's been at issue here from the very beginning. And that went up to the Paris Court of Appeals and up to the Court of Cassiation. And that court's ruling was limited in the sense that it said that the Paris Court of Appeals had mistakenly added a requirement that the treaty did not require in terms of what is an investment in the court. And they had to undo it and send it back to the Paris Court. But that's as far as it went. Is that your understanding? Well, my understanding, Your Honor, is that there is no distinction, at least from the jurisdictional issue that was brought in the arbitration, in the arbitral proceeding, the jurisdiction of the arbitral tribunal. These are all issues that are brought up together to the Court of Appeals, whether the award is valid. And the Court of Appeals decides on all of the that are brought up to the Court of Cassation. And the Cassation Court reviews all the issues and then decides on whatever issues the Court of Cassation decides to decide. And based on this decision, the Court of Cassation sends the case back to the Court of Appeals. Court of Appeals, in turn, says... I'm not disagreeing with that general statement. But what I'm trying to is arguing the original tribunal had no jurisdiction under the treaty. And that issue goes up. And the highest court in France says, well, and these are my words, obviously not the court. There are a lot of issues in this case. Some of them are jurisdictional, some of them aren't. But at least as to how the Paris Court of Appeals defined an investment, it added a factor that was error. So we're sending this matter back to the Paris Court of Appeals. When the case gets to the district court, the district court, and tell me if this is a correct reading or not, appears to think that the jurisdictional issue has been resolved. And the only remaining question, basically under the New York Convention, is whether enforcement of the award would be contrary to international public interest. I'm not sure that that would be my understanding, Your Honor. All right. So what is your understanding? Well, my understanding is that the district court did not address, well, it did address that. The district court was fully aware that the it's just, I believe that's clear from the district court's assessment. Because the district court was well aware that this is the issue that was brought up in the Paris Court of Appeals. That is the issue that was brought up before the Cassation Court. That is the still issue that is being resolved. And the district court knew that, was aware of that, and considered all the Eurocar factors. And based on this balancing, the district court said, enough is enough. Seven years is enough. Here's what the district court said, and this is at the Appendix 318. It said, talking about the third factor under the Euro... I'm sorry, it's a balance of the A3? A318. Thank you. See the paragraph talking about the third factor? Almost there. Sorry. The third factor. Yes, it's in front of me. Yes, Your Honor. Good. Okay, so if you scroll down, the district court says, moreover, you see that sentence? Yes. It says, the Court de Cassation. How do you pronounce it?  All right. Has already concluded that one of Moldova's arguments for setting aside the award, that the ad hoc tribunal lack jurisdiction, is without merit, leaving just the argument that the arbitral award is contrary to public policy for consideration. This reduces the likelihood that the arbitral award will be set aside, and thus counsels in favor of lifting the stay. End of quote. So my question is, is this an accurate statement, essentially, that the public policy is the only remaining issue? And if it's not, then doesn't this reflect, or does it reflect, a fundamental misunderstanding of the status of the proceedings, which is what the district court said it had to determine? And that is so, even as Judge Ginsburg noted, Moldova did not mention the referral to the European court before the judge decided to lift the stay. Well, Your Honor, the, regardless of this statement of how this court understood the, the Europe car factors do not even take into account the likelihood whether the award will not be set aside by the court, but the court in the foreign jurisdiction. The factor is the comparative level of scrutiny that the arbitral award will receive in the French system. That's the correct statement in the first sentence of that paragraph on 8.318. I believe that that would be the key factor, regardless whether, how the judge understood the decision of the court of cassation. Well, if he misunderstood that, why would he, why, why would it follow that he could count this factor as weighing slightly in favor of lifting the stay, if in fact, regardless of the level of scrutiny, the jurisdictional matter is in fact still in favor? Well, the jurisdictional matter was in dispute from the, from the get-go that we, we don't deny that. The question is the balancing of the factors, because this is not only one factor. You don't deny it, but he was under the impression that it was no longer in dispute. And I have another question closely related to this. Did Moldova ever argue about this? I don't believe so. I don't believe that Moldova brought this up. So we do have a doctrine that the court can, citing Supreme Court decisions, address a matter that goes to the heart of the case where Moldova challenged the jurisdiction, never surrendered that challenge. The highest court in France has yet to, to rule on that. And yet in determining whether or not to lift a stay, the district court proceeds on the assumption that the jurisdictional matter has been resolved as a matter of French law. Well, Your Honor, this is just only one of the factors. There are multiple factors, and this is the court discretion. This court never ruled, at least my understanding, my recollection is this court never ruled that the district court ever abused discretion, would be abuse of a discretion standard in lifting or granting a stay. So regardless of the understanding of the court, of the district court's court decassation decision, there are many other, there are other factors to consider as well. All right. So your point then, and I'll ask counsel for appellant about this, is that appellant never argued there was an abuse of discretion, merely that it was premature. That is correct, Your Honor. Yes. So in arguing it was premature, was not Moldova saying, although I grant you it's not in haec verba, it's premature because the question of jurisdiction is still at issue being litigated. Well, I believe that what Moldova argued is that generally there are proceedings in foreign countries that are ongoing, and there was no indication that they specifically argued just because the jurisdictional issue is still allegedly at issue in foreign proceedings, then this should be, the stay should be granted. And moreover, So can you say that again for me so I'm very clear on what your position is? What my position is that the general statement, the general argument of Moldova, that there are, which is what they made, that there are foreign court proceedings ongoing, never pointed out to specific jurisdictional issues, that it's just something that Moldova waived. But what I'm trying to get at is that was it's the district court understood it had raised the jurisdictional question, but it understood that that was resolved. And you don't think it's a fair understanding of the argument that it's premature to lift the stay because there are these pending proceedings on the question of jurisdiction of the tribunal. And, yeah, excuse me, go ahead. My understanding, Your Honor, is that it's a general argument that they're at, Moldova makes a general argument that they're at pending proceedings, and the court was very well aware of this pending proceedings, that nothing was hidden from the court. So regardless which issue was before the court, specifically, whether it's jurisdictional issue or public policy or other issues, the court well aware that there's an ongoing proceedings, which may in fact take more years to decide, because the European Court of Justice does not simply issue a decision on the merits. It only issues an advisory, that's what my understanding, only issues an advisory decision on the issue of the convention of the Energy Charter Party that goes back to the Paris Court of Appeals, and then the Court of Appeals may decide whatever they may decide, and then it may go up to the Court of Cassation. It may as well take three, four, five, six, seven years more, and that's what the district court was aware of. My only question would be then, you may be right, that even if the district court understood that it had misunderstood that the jurisdictional issue had been resolved, it may still have decided that it was going to lift the stay. But why wouldn't this court want to remand that question to the district court to correct its understanding of a fairly, not a, of the fundamental issue in the case, because the district court was proceeding on the premise that jurisdiction had been decided. Now, if he understood that jurisdiction was still an open question, he might decide to deny the motion to lift the stay, or he might decide to lift the stay. But from reading the record, I can't tell what he would do. I mean, there's no question this is an old matter. The contracts are 20 years old, that arbitration is a slow process, a costly process, not the speedy, inexpensive arbitration notion that was entertained by the Supreme Court in the early days. I mean, the international treaties and conventions have changed the nature of arbitration. And I think the hesitancy here, and I just want to be clear on your position on that, I agree that this is only one of several factors for the district court to consider. But if it's the fundamental issue in the case, why wouldn't we want to be sure that the district court wants to proceed, particularly when from the very beginning, the Paris court in the dissent by the chief judge pointed out that this question, I mean, to the extent Moldova says our decision may have extraordinary implications, so too may whatever the French courts do on remand, much less what the European court does in defining what is an investment under this treaty. That's the only question I have. Your Honor, may I address that? Of course. Yes, what I'd like to say is that the standard is abuse of discretion, that regardless whether the misunderstanding of the district court, whether it was misunderstanding or correct understanding, that does not rise to the abuse of discretion standard that is required for this court to overrule the district court, to send it back. That is in the general understanding of the district court that the proceedings are still ongoing and that regardless whether it's jurisdictional issues or some other issues, that was absolutely correct understanding of the district court. The district court took into account in making this decision. Thank you. All right, Judge Ginsburg. Oh, thank you. All right. Mr. Grasso, you can have two minutes. Thank you very much, Judge Anderson. I would just like to point out the circular nature of Apelli's arguments, especially given Judge Rogers' comment about the treaties that we now have that have changed the game in arbitration, which I agree with. One of the relevant treaties here is the United Nations Treaty on Commissions in International Trade Law. When you take that treaty along with the ECT treaty and Moldova's position that it never agreed to the arbitration, then it can't be argued that the issue of arbitration can be decided by the district court. So, again, going to the heart of the issue, as pointed out by Judge Rogers, of jurisdiction and what the district court knew and didn't know, what they would have done, what they, you know, under different, you know, hypothetically, under circumstances which none of us here can predict, and circumstances that are beyond our ken to a great extent, just for inherent reasons. I think that it's the most prudent thing to do for this court to reserve judgment. So, let me ask you, counsel, can you point me in the record to where Moldova argued before the district court that there were pending proceedings and they were addressing, among other things, the jurisdiction of the tribunal under the treaty? And if you can't do it now off the top of your head, I would ask that you submit a letter to the court. With my colleagues, subject to my colleagues' agreement. Can you answer it now? For the sake of being thorough, I'd prefer to submit a letter to the court, just so that I don't miss anything. Because the only thing that I can think of off the top of my head I don't think is as a clear-cut answer as Judge Rogers may be looking for. All right, Judge Rogers, could you restate what you want him to research? Where in the record did Moldova identify for the district court that the pending proceedings involved, among other things, the question of the jurisdiction of the tribunal under the treaty? Understood. I will submit that in a letter to the court. When would you like that by? Judge Henderson, be guided by you. How about five days? And Mr. Byrd? I was thinking about 1230 today. Yeah. And Mr. Byrd, you can have two days to respond to that. All right, any more questions, Judge Rogers, Judge Ginsburg? No, thank you, Judge Henderson. All right, your case is submitted.
judges: Henderson, Rogers, Ginsburg